THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* AL SILIN-SKY, Otherwise Known as ABRAHAM SILINSKY, and Another, Respondents.

First Department, May 13, 1932.

*Le Roy Mandle* of counsel [*Thomas C. T. Crain, District Attorney*], for the appellant.

*Ferdinand Pecora* of counsel [*Harry C. Kane* with him on the brief; *Hartman, Sheridan, Tekulsky & Pecora*, attorneys], for the respondents.

MERRELL, J. The indictment against the defendants charged that the defendants, on September 11, 1930, in the county of New York, did buy, receive, conceal and withhold, knowing the same to have been stolen, the following stocks: 270 shares of British Type Investors; 20 shares of North American; 20 shares of United States Financial; 50 shares of Dixton, Inc.; 500 shares of Ardsley Butte Corporation; and 35 shares of Maxwell Corporation, which said

stocks belonged to and had been recently stolen from one Franz W. Dumig. In dismissing the indictment the justice presiding at General Sessions rendered a brief opinion stating as the sole ground for dismissing the indictment that the record failed to show " by direct proof or circumstances " that when the complainant's stock was placed in the hands of the defendants they had any knowledge or reason to believe that the property had been criminally obtained or stolen. We are of the opinion that the evidence presented to the grand jury, uncontradicted, was sufficient to justify a petit jury in finding the defendants guilty of the crime charged. Section 258 of the Code of Criminal Procedure provides as follows: " The grand jury ought to find an indictment, when all the evidence before them, taken together, is such as in their judgment would, if unexplained or uncontradicted, warrant a conviction by the trial jury." The testimony presented to the grand jury, upon which the indictment was found, disclosed that on September 10, 1930, a man by the name of Bruen or Braun telephoned to the complainant that he, Bruen, was the assistant manager of Densmore & Livingston, a firm of stockbrokers of whom the complainant was a customer. Later in the same day Bruen called at the home of the complainant and inquired of the complainant as to what stocks he owned. The complainant informed Bruen of the various stocks owned by him, and Bruen then stated that he could take said stocks of the complainant, pledge them as security, and obtain a loan, and, with the money so obtained, could purchase 170 shares of Baldwin Locomotive stock on behalf of the complainant. The complainant believed and trusted Bruen, who asserted that he was the assistant manager of complainant's firm of stockbrokers, and so trusting Bruen the complainant indorsed and delivered to him the certificates of stock of the various shares mentioned in the indictment. At the same time the complainant signed an authorization and received in return for said stock certificates a receipt executed by Bruen. Bruen told the complainant that in a day or two he would be notified of the transaction. Three days later, on September thirteenth, the complainant having heard nothing further from Bruen, telephoned the manager of Densmore & Livingston and was informed that said firm knew nothing of the transaction, and that the complainant had better come down to their office. On September fifteenth the complainant called at the office of Densmore & Livingston and was introduced by the manager to an attorney who accompanied the complainant to the office of the Attorney-General, where the case was placed in charge of a Deputy Attorney-General named Davis. Davis and the lawyer, Birnbaum, then went to the transfer agents of British Type Investors stock to learn whether the securi-

ties in question had been transferred. They there learned that said certificates had been transferred, and that they contained the indorsements, " J. S. Fried & Company " and " Spiegelberg & Plone." The Deputy Attorney-General and Birnbaum then proceeded to the office of " J. S. Fried & Company," under which firm name the defendants pretended to conduct their business. The defendants were doing business, not as a corporation, but as individuals, having, as they claimed, at one time purchased the business from a man named J. S. Fried. Fried was not at any time connected in business with the defendants. The door at the entrance of the office occupied by the defendants had upon it the name " J. S. Fried & Company," but did not bear the name of either of the defendants. On entering defendants' office they found the same barren of the usual paraphernalia of stockbrokers, such as books, records, tickers or stock boards. Neither of the defendants had a checking account.

The evidence presented to the grand jury showed that the defendants admitted receiving the stolen securities from Bruen and another man named Denis on September 11, 1930, the day after the securities had been stolen. The law is well settled that possession of goods recently stolen of itself merits the inference that such possession is a guilty one, and places upon the defendant the burden of explaining such possession. The defendants claimed that all they knew about Bruen was that he had worked upstairs and had come into their office and " talked on baseball." The defendants professed not to know where Bruen lived, except that he lived in " some hotel around the Plymouth vicinity." The evidence showed that the defendants had paid Bruen $2,500 in cash an hour before the Deputy Attorney-General and the complainant's lawyer had arrived at their office. The evidence also showed that on the same day the defendants received the stock from Bruen, on September eleventh, they gave the stock to Spiegelberg & Plone, as brokers, for Spiegelberg & Plone first to transfer the securities and then sell them. A witness in the employ of Spiegelberg & Plone testified that this was " sometimes, very often done in the usual course of business." It is quite evident that by transferring the stock first the defendants could ascertain whether the true owner had placed his stop on the stock and would avoid any future stock stop after the transfer of the securities had been made. Spiegelberg & Plone, as brokers, sold the stock in question and made payment to the defendants September 12, 1930, two days after the stocks were stolen. Payment to the defendants was made by a check of Spiegelberg & Plone to the order of " J. S. Fried & Company " for the sum of $2,587. Before the Attorney-General the defendants testified

that they had no bank account and " cashed it [the checks] around somewheres." On September 15, 1930, when the Attorney-General first spoke to the defendants, he asked them " Whether they had received other certificates and they told me that they had and they had sold them." The following day the two defendants testified before the Attorney-General that they had sold the Dixton stock, but that the Financial stock they had given back. Ten days later the defendants returned to Birnbaum, attorney for the complainant, the United States Financial stock. It, therefore, appears that this stock must have been in their possession all of the time, and that they falsely testified before the Attorney-General that they had given back the stock. In *People* v. *Galbo* (218 N. Y. 283) Judge CARDOZO, writing for the Court of Appeals (at p. 290), said: " It is the law that recent and exclusive possession of the fruits of crime, if unexplained or falsely explained, will justify the inference that the possessor is the criminal." The defendants freely admitted the possession of the stolen property on the day following the theft. They then falsely explained such possession, which, of itself, justified the grand jury in returning the indictment against them. The evidence before the grand jury also disclosed other suspicious circumstances. The defendants stated that they received $2,587 from Spiegelberg & Plone for the sale of the securities. Of this money the defendants gave Bruen $2,500, retaining for themselves $87. The commission charged by the regular broker, Spiegelberg & Plone, for the sale of the securities was only $25. When the Attorney-General conducted his examination of the defendants they stated that they did not have any of the securities or funds belonging to Bruen or Denis. Nevertheless, ten days after they gave this testimony they not only delivered to the attorney for complainant the securities, but also $140 in cash.

We are of the opinion that the court erred in dismissing the indictment because of the absence of " direct proof or circumstances that when the complainant's stock was placed in the hands of the defendants they had no knowledge or reason to believe that the property had been criminally- obtained or stolen." Direct proof is not essential to establishment of the crime charged. (*People* v. *Dowling*, 84 N. Y. 478; *People* v. *Conroy*, 97 id. 62; *People* v. *Wilson*, 151 id. 403.) The Court of Appeals in *People* v. *Dowling* (*supra*, at p. 485) wrote as follows: " The direct proof of knowledge of the larceny is not needed to convict of receiving stolen goods with guilty knowledge. That knowledge may be gathered from the circumstances of the case, of which one is the buying the goods at an under valuation. (1 Hale, 619; 2 East's P. C., chap. 16, § 153, p. 765.)" The evidence shows that the defendants, claiming to be

dealers in securities, made no inquiry whatever as to the true owner of the certificates of stock. The certificates bore on their backs the blank indorsements of the complainant. Section 1308 of the Penal Law (as amd. by Laws of 1928, chap. 354) provides as follows: " A person who being a dealer in or collector of any merchandise or property, * * * fails to make reasonable inquiry that the person selling or delivering any stolen or misappropriated property to him has a legal right to do so, shall be presumed to have bought or received such property knowing it to have been stolen or misappropriated. This presumption may however be rebutted by proof." The defendants claimed that they asked Bruen or Denis how they got the stock, and that they were informed that they got the stock on a deal, and that they were giving Dumig, sometimes spelled in the record Deming, mortgage bonds for the stock, but were unable to state whether they got the stock in payment for the mortgage bonds. It is claimed that Bruen and Denis stated that they got the stock as a result of a deal with Dumig. The defendants made no inquiry whatever from Bruen as to where Dumig or Deming could be located and as to what was his business, or anything regarding the whereabouts of the true owner, or as to the party from whom Bruen had received the securities. We think the grand jury was justified in concluding that the defendants had made no reasonable inquiry as to whether the securities which they had received had not been stolen or misappropriated. In the absence of such inquiry being shown, the grand jury was justified in returning an indictment against the defendants. The recent case of *People* v. *Nelson* (234 App. Div. 481), decided by this court, is decisive authority as to the necessity of making reasonable inquiry with reference to the history of the securities which the defendants received. The evidence before the grand jury made out a *prima facie* case, and the indictment should not have been dismissed by the General Sessions. The case at bar is much stronger than that of *People* v. *Rogan* (223 App. Div. 242; affd., 249 N. Y. 544). In that case the defendant obtained possession of stolen property about two weeks after it had been stolen. This court and the Court of Appeals, in affirming its decision, held that the jury was justified in finding that such possession was a recent one and in inferring therefrom that the defendant possessed knowledge that the property received had been stolen. In the case at bar the defendants received the stock in question within a day after it had been stolen. Not only that, but the defendants gave a false explanation as to their possession of the stocks by telling the Attorney-General that they had no longer possession of the property, and ten days later delivering some of the stolen property to the complainant's attorney, Birnbaum. A

recent possession of the property under the circumstances was presented to the grand jury which justified the indictment, and it was error for the General Sessions to dismiss the same.

The order appealed from should be reversed and the indictment against the defendants reinstated.

FINCH, P. J., McAVOY, MARTIN and SHERMAN, JJ., concur.

Order reversed and indictment reinstated.